# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TYRELL HENDERSON,<br><br>Defendant. | CR 16-10-GF-BMM<br><br>MEMORANDUM<br>AND ORDER |

Defendant Tyrell Henderson (Henderson) has moved for a new trial under Fed. R. Crim P. 33. Henderson argues that a new trial is warranted because the government violated its duty to disclose impeachment evidence relating to Chippewa Cree law enforcement officer J.D. Cabanas (Cabanas), as required under *Brady v. Maryland*, 373 U.S. 83 (1963). The Government opposes the motion. The Court conducted a hearing on the motion on June 8, 2017.

## BACKGROUND

A jury convicted Henderson of two counts of involuntary manslaughter on January 11, 2017, following a three-day trial. The charges against Henderson arose from an automobile accident that occurred on the Rocky Boy's Indian Reservation at approximately 4:00 a.m. on September 19, 2015. The vehicle driven by Henderson crossed the centerline and struck a vehicle occupied by three

women. Two of the women died as a result of injuries suffered in the accident.

Henderson's vehicle was traveling approximately 60 mph at impact. The other vehicle was traveling at approximately 12 mph at impact. Henderson's toxicology report revealed that he had 0.72 mg/l of meth in his system shortly after the accident. The toxicology report for the deceased driver of the other vehicle showed no ethanol in her blood sample. Cabanas investigated the accident along with Chippewa Cree law enforcement officer Larry Bernard, and the Montana Highway Patrol.

The prosecutor submitted a request to the Bureau of Indian Affairs (BIA) in November 2016 seeking any impeachment information that may exist with respect to Cabanas. The BIA disclosed no derogatory information. The prosecutor interviewed Cabanas on January 8, 2017, in preparation for the trial. The prosecutor asked Cabanas whether he was aware of any pending complaints, investigations, or disciplinary actions pending against him based upon the performance of his official duties. Cabanas responded that he had no knowledge of any such complaints, investigations or disciplinary actions.

Cabanas's response was not accurate. Cabanas knew, at that time, that Chippewa Cree Police Chief Allen Primeau had filed a complaint against him on May 5, 2016. The complaint alleged two incidents of misconduct. The complaint

alleged that Cabanas had failed to report a vehicle accident to Chief Primeau. The complaint also alleged that Cabanas had released a male inmate in violation of a tribal court order. Cabanas knew, on January 8, 2017, that the BIA was in the process of investigating the complaint. The BIA had informed Cabanas of its investigation on June 30, 2016.

The prosecutor learned of the complaint and investigation against Cabanas on March 31, 2017, approximately 2 ½ months after the trial was completed. The prosecutor informed defense counsel of the complaint and investigation on April 6, 2017, based on the fact that Cabanas had testified at trial. Henderson filed the present motion for a new trial on April 25, 2017.

## **DISCUSSION**

The Court may grant a new trial under Fed. R. Crim. P. 33 "if the interest of justice so requires." The decision to grant or deny a motion for a new trial lies within the "sound discretion of the trial court." *United States v. Powell*, 932 F.2d 1337, 1340 (9th Cir. 1991).

A prosecutor has a duty under *Brady* "to provide a defendant with all material exculpatory and impeachment evidence prior to trial." *Gonzalez v. Wong*, 667 F.3d 965, 981 (9th Cir. 2011). A *Brady* violation constitutes sufficient grounds for a new trial under Rule 33. *United States v. Pelisamen*, 641 F.3d 399,

408 (9th Cir. 2011). To establish a *Brady* violation, a defendant must show:

1. The government withheld evidence that was favorable to him, either because it was exculpatory evidence or impeachment evidence;

2. The government willfully or inadvertently withheld the evidence; and

3. The withheld evidence was material to his guilt or innocence.

*Shelton v. Marshall*, 796 F.3d 1075, 1083 (9th Cir. 2015); *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013); *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005).

The government does not contest the first two elements. The government does not dispute that evidence of the complaint and investigation against Cabanas would constitute impeachment evidence that would have been favorable to Henderson. The government also does not dispute that this evidence was not provided to defense counsel before trial although it was in the possession of the BIA. The only issue in dispute is whether this impeachment evidence was material to the determination of Henderson's guilt or innocence.

### **Materiality**

The government's failure to disclose impeaching information regarding a government witness constitutes a *Brady* violation only if the undisclosed

4

information was "material."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).  The defendant has the burden of showing that the withheld evidence was material.  *United States v. Si*, 343 F.3d 1116, 1122 (9th Cir. 2003).

Undisclosed evidence is material if the government's suppression of the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Gonzalez*, 667 F.3d at 982 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 1995)).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Shelton*, 796 F.3d at 1084 (quoting *Kyles*, 514 U.S. at 434).

The determination of whether undisclosed evidence is material must be made in light of the entire record.  *United States v. Agurs*, 427 U.S. 97, 112-113 (1976).  The court must "undertake a careful, balanced evaluation of the nature and strength of both the evidence the defense was prevented from presenting and the evidence each side presented at trial."  *Bailey v. Rae*, 339 F.3d 1107, 1119 (9th Cir. 2003).  "If there is no reasonable doubt about [the defendant's] guilt whether or not the additional evidence is considered, there is no justification for a new trial."  *Agurs*, 427 U.S. at 112-113.  If the court determines, however, that the absence of

the suppressed evidence has resulted in a verdict that is not worthy of confidence, the court must set aside the defendant's conviction. *Silva*, 416 F.3d at 986 (citing *Kyles*, 514 U.S. at 435-36)).

Courts are to undertake a two-step inquiry in determining whether impeachment evidence is material. *Gonzalez*, 667 F.3d at 982. First, the court must "ask whether . . . there was a reasonable probability that the new evidence would have changed the way in which the jurors viewed" the witnesses's testimony. *Id*. Second, the court must "ask whether . . . there was a reasonable probability that this change would have resulted in a different verdict." *Id*.

The significance of the witness is itself significant in determining whether undisclosed impeaching information concerning the witness is material. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of [impeaching] evidence" concerning the witness would likely be material. *United States v. Schwarz*, 259 F.3d 59, 64 (2nd Cir. 2001); *see also*, *Shelton*, 796 F.3d at 1088 (finding undisclosed evidence regarding cooperating co-defendant material because there was "reasonable probability that the jury would have . . . reached a different verdict had [the witness] been thoroughly impeached."); *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005) (en banc) (finding undisclosed evidence material

where tainted witness's testimony "was the centerpiece of the prosecution's case" and "[n]early all of the other evidence against [the defendant] was circumstantial."); *Sedaghaty*, 728 F.3d at 902 (finding impeachment evidence is "likely material when it impugns the testimony of a witness who . . . is critical to the prosecution's case").

Cabanas was not a significant witness in this case. The government presented 19 witnesses at trial, including eight law enforcement officers (five of whom were troopers from the Montana Highway Patrol), one eye-witness to the crash — passenger Casey Henry, two medical personnel, and seven employees of the Montana State Crime Lab.

Cabanas's testimony focused, in general, on his observations of the crash scene. (*See Trial Transcript*, Doc. 77 at 6-31). Cabanas described his observations of Henderson and the victims. Cabanas described the location of the accident. Cabanas described the road conditions. Cabanas described the vehicles involved in the accident. Cabanas testified about who was wearing seat belts. Cabanas also authenticated pictures of the vehicles.

Much of Cabanas's testimony was similar to, and corroborated by, the testimony of other witnesses. Other witnesses described the respective locations of the vehicles and the conditions of the vehicles. Other witnesses described the road

conditions. Other witnesses testified that victim R.B was driving the other vehicle. Other witnesses testified that victim L.T. was in the back seat of the other vehicle. Other witnesses testified as to who was wearing seatbelts. Henderson, himself, testified that he was driving the Chevrolet Impala. Photographs taken by the Montana Highway Patrol officers corroborated photographs of the crash scene taken by Cabanas.

The accident reconstruction evidence, the medical evidence regarding the presence of methamphetamine in Henderson's blood sample, and the lack of ethanol in the blood sample of the driver of the other vehicle, was the critical evidence in this case. The Montana Highway Patrol officers provided all of the critical information about the crash including, the point of impact on each vehicle, the location of impact on the roadway, the speed of each vehicle at impact, the throttle position of each vehicle at impact, and the brake information for each vehicle at impact. Medical witnesses and employees of the Montana State Crime Lab provided the critical information about the presence of meth in Henderson's blood. Medical witnesses and employees of the crime lab also testified that the driver of the other vehicle, R.B., had no ethanol in her blood sample.

The Court agrees with Henderson that if the jury would have heard the undisclosed impeaching evidence relating to Cabanas, they may have changed the

way they viewed Cabanas's testimony. The Court finds, however, that the absence of such evidence had no impact on the jury's verdict given the relative insignificance of Cabanas's testimony compared to the other witnesses, and the overwhelming weight of evidence against Henderson provided by other witnesses.

Accordingly, IT IS ORDERED:

Defendant's Motion for a New Trial (Doc. 73) is DENIED.

DATED this 19th day of June, 2017.

/s/ Brian Morris

Brian Morris
United States District Court Judge